## State v. Bard
*[Cite as 6 AOA 32]*

*Case No. 2658*
*Clark County, (2nd)*
*Decided August 30, 1990*

*Lori Collins, 50 East Columbia Street, Springfield, Ohio 45502, for Plaintiff-Appellee.*

*Wilfred L. Potter, 234 North Limestone Street, Springfield, OH 45503, for Defendant-Appellant.*

FAIN, J.

Defendant-appellant Lonnie R. Bard was convicted, following a no contest plea, of violating both R.C. 4511.19(A) (1), by driving under the influence, and R.C. 4511.19(A) (3), by driving with a prohibited concentration of alcohol in his breath, and sentenced accordingly. Bard appeals from his convictions and sentence, contending that the trial court should have granted his motion to suppress the results of a breath test.

Bard contends that his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, were violated when he was required to perform certain field sobriety tests before having been given his *Miranda* warnings; that his consent to the breath test was not knowing and intelligent; and that the State failed to prove certain factual predicates for the admissibility of the breath test result.

We conclude that field sobriety tests are not testimonial in nature, and do not, therefore, require the prior giving of *Miranda* warnings. We further conclude that there is evidence in the record from which the trial court could have found that Bard's consent to the breath test was knowing and intelligent. However, we conclude that there was insufficient proof that the machine used to test Bard's breath was ever the subject of a radio frequency interference survey, pursuant to O.A.C. 3701-53-02(C). Although the trial court purported to take judicial notice that the machine used to test Bard's breath had been the subject of a proper radio frequency interference survey, we conclude that this fact was not properly the subject of judicial notice.

Because we agree with Bard that one essential predicate for the admissibility of the breath test was not proven, we agree with him that the trial court erred when it overruled his motion to suppress. Accordingly, Bard's conviction for violating R.C. 4511.19(A) (3) will be reversed. Because the breath test was not essential to Bard's conviction for violating R.C. 4511.19(A)(1), that conviction will be affirmed. This cause will be remanded for resentencing accordingly.

I. Kenneth A. Hopper, a deputy in the Clark County Sheriff's Department, observed a Chevy pickup truck being driven by Bard at about 1:20 in the morning. Bard first came to Hopper's attention when he went left of center, "almost causing a head-on collision with my vehicle." Hopper then turned around and followed Bard for about two or two and one-half miles. During this time, Hopper saw Bard go left of center "several times." Hopper then turned on his siren and lights, and Bard, in response, stopped his truck, "in the middle of the road." Hopper then had Bard pull his truck over to the side of the road, and Hopper pulled over right behind him. Bard then got out of his truck, and began walking towards Hopper's patrol car. Hopper observed that Bard was "walking kind of staggering coming back toward my vehicle." Hopper then asked "the subject if he had been drinking or anything and he said no." Hopper detected "a strong alcoholic odor on [Bard's] presence."

At this point, Hopper administered two field sobriety tests: the heel-to-toe test and another test that Hopper described as: "it's put your heels together, tilt your head back and extend your one right hand out and touch the tip of your nose."

Bard's performance was not satisfactory on either of these tests, and Hopper arrested Bard and took him to the Clark County Jail. At the jail, Hopper advised Bard of his *Miranda* rights and also of his right to refuse to take the breath test. Bard agreed to take the test.

On cross-examination, Hopper gave the following testimony:

"Q. I notice on your intoxilizer or under the influence report that you indicate Mr. Bard's ability to understand instructions was poor, is that correct?

"A. Yes.

"Q. So you are saying he was so intoxicated or for some reason he had trouble following instructions, is that right?

"A. Yes.

"Q. But you still gave him the intoxilizer test after reading him the implied consent form, is that right?

"A. Yes.

"Q. Even though that, in your opinion, he was having trouble understanding what you were telling him, is that right?

"A. Yes.

"Q. And so you were not sure whether or not he understood and gave you a knowing and intelligent consent to take that test are you?

"A. I asked him several times. I asked him at least twice on basically every question I have asked him.

"Q. I understand, but my question to you was, you aren't sure that he gave you a knowing and intelligent consent to take that test, are you?

"A. No sir."

On re-direct, Hopper testified as follows:

"Q. All right. Then you read the implied consent form, correct?

"A. Yes.

"Q. And you asked him if he understood what you were reading from that form, did you not?

"A. Yes.

"Q. And what did he indicate to you?

"A. He stated yes.

"Q. That he understood what you were saying?

"A. He understood what I was saying.

"Q. Did you ask him that twice, also?

"A. No, I only asked him that once.

"Q. OK. But it was your understanding at that time that he knew what you were saying to him?

"A. Yes, ma'am."

Richard Dean Smith, another deputy in the Clark County Sheriff's Department, was the operator who administered the breath test. He testified that he was present when Hopper advised Bard of his right to refuse the test. He further testified as follows:

"Q. And what did you observe?

"A. Deputy Hopper had to read him a refusal form, an implied consent refusal form, which I witnessed it and then after that I gave him the test.

"Q. OK. You observed Deputy Hopper read the implied consent form?

"A. Right.

"Q. Do you recall whether the defendant indicated that he understood--

"A. He said he understood.

"Q. He did say he understood?

"A. Yes.

"Q. Was it your opinion that he understood what Deputy Hopper read to him?

"A. Yes."

The test result was .176. Bard was charged with D.U.I.

Bard moved to suppress the breath test. In support of his motion to suppress, Bard specifically alleged, among other things, that OAC 3701-53-02(C), which requires that a radio frequency interference survey be performed for the type of breath testing instrument used in this case, was violated.

At the hearing on the motion to suppress, smith, the breath test operator, gave the following testimony concerning the required radio frequency interference (RFI) survey.

"Q. Do you have any information whether this particular machine had ever had an RFI grid for it, do you know that?

"A. Yes, in the book there.

"Q. Could you show that to me, please?

"A. You mean the calibration test?

"Q. No, sir, the RFI grid done to that machine.

"A. I don't know what that is, sir.

"Q. You don't know what that is, so you can't testify to it?

"A. I can testify that it was calibrated every week."

At the close of the hearing, Bard argued, among other things, that there was no proof that a radio frequency interference survey had been conducted with respect to the machine used to test his breath as required by OAC 370153-02(C). Whereupon, Smith, the operator, was permitted to resume the stand, and gave additional testimony. Essentially, this testimony established that the machine had not been moved from the location marked for it with tape, and that, had it been moved, he would have been informed. However, neither Smith nor anyone else testified that a radio frequency interference survey had been conducted with respect to the machine used to test Bard's breath.

Prior to Smith's having resumed the stand, the trial court made the following statement:

"I am familiar with the section (OAC 3701-53-02(C)] and note the recommendation. I would, however, find it to my knowledge definitely having been offered to me on prior occasions on this particular machine that the RIF [sic] grid has been performed."

Following the hearing, the trial court overruled Bard's motion to suppress. Bard then

changed his plea to no contest, was found guilty, and sentenced accordingly. From his conviction and sentence, Bard appeals.

II. Bard's First Assignment of Error is as follows:

"FAILURE TO READ MIRANDA AT THE SCENE PRIOR TO ORDERING THE AC-CUSED TO PERFORM CERTAIN INCULPA-TORY ACTIONS REQUIRES SUPPRESSION."

Essentially, Bard contends that the field sobriety tests he was required to perform should have been suppressed because they were administered while he was in custody and before he had been advised of his rights pursuant to *Miranda, supra.* The State contends that Bard was not in custody when the field sobriety tests were performed, so that no *Miranda* warnings had to be given.

We find it unnecessary to determine whether Bard was sufficiently in custody that *Miranda* warnings were required to be given. We agree with the State's alternative argument, that field sobriety tests are not testimonial in nature. *City of Piqua v. Hinger* (1968), 15 Ohio St. 2d 110, first paragraph of syllabus. See, also, *City of Huber Heights v. Murray* (March 14, 1988),

Bard's First Assignment of Error is overruled.

III. Bard's Second Assignment of Error is as follows:

"INABILITY OF THE ACCUSED TO UN-DERSTAND HIS STATUTORY RIGHT TO REFUSE THE BAC VERIFIER REQUIRES SUPPRESSION OF THE EVIDENCE."

Bard contends that he did not knowingly and intelligently waive his Ohio statutory right to refuse the breath test, and that, therefore, the test should have been suppressed.

Bard bases his argument upon Hopper's admission, on cross-examination, that he could not be "sure" that Bard understood Hopper's explanation of the right to refuse to take the breath test. However, both Hopper and Smith, who was present during the explanation, testified that Bard indicated that he understood the explanation of his right to refuse the breath test, and that it appeared to them that Bard did understand that he had the right to refuse.

The trial court could have taken Hopper's admission that he was not "sure" that Bard understood the explanation as nothing more than an indication that Hopper could not be absolutely certain what was going through Bard's mind, which is not surprising.

We conclude that there is testimony in the record that, if believed, was sufficient to persuade the trial court, by a preponderance of the evidence, that Bard's consent to the breath test was knowing and intelligent.

Bard's Second Assignment of Error is overruled.

IV. Bard's Third Assignment of Error is as follows:

"FAILURE OF THE STATE TO PROVE COMPLIANCE WITH DEPARTMENT OF HEALTH REGULATIONS REQUIRES SUP-PRESSION OF THE RESULTS."

Among other things, Bard contends that the State failed to prove that a radio frequency interference survey was conducted with respect to the machine used to test his breath, in compliance with OAC 3701-53-02(C), which provides as follows:

"A radio frequency interference (RFI) survey shall be performed for each breath testing instrument listed in paragraphs (A)(1) to (A)(3) and (A)(5) of this rule that is in operation at each breath testing site. RFI surveys are not required for the instrument listed in paragraph (A)(4) of this rule. Survey results shall be recorded on the form set forth in Appendix G to this rule. The original RFI survey form and any RFI survey forms shall be kept on file in the area where tests are performed. A new survey shall be conducted when a breath testing instrument's spatial placement or axis is changed from that designated in the most recent survey form. Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check."

Bard contends, correctly, that the State offered no proof that an RFI survey was ever conducted with respect to the machine used to test Bard's breath. Bard specifically alleged the failure to comply with the RFI survey requirement in his motion to suppress.

The State contends that, although there was no actual proof that a radio frequency interference survey was conducted, the trial court properly took judicial notice that an RFI survey was conducted.

Furthermore, the State points out that there was evidence from which the trial court could have inferred that the machine had not been moved from its original placement and orientation.

Because there was no evidence in the record to establish that a radio frequency interference

survey was performed, the trial court's taking judicial notice of this fact was crucial. Evid. R. 201(B) provides for those facts that may properly be the subject of judicial notice, as follows:

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The trial judge had evidently had other cases in which breath tests using this particular machine were offered in evidence, and evidently recalled that there had been satisfactory proof, in those cases, that a radio frequency interference survey had been conducted with respect to this machine. Although the trial judge may have been aware of that evidence, in previous cases, it would not be a fact "generally known within the territorial jurisdiction of the trial court." Furthermore, we conclude that it would not be a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Whether this particular machine was the subject of a properly conducted radio frequency survey would presumably depend upon the testimony of the person or persons who conducted the survey. The persons conducting the survey would have some vested interest in establishing the validity of the survey, since it would tend to reflect poorly upon their professional performance if the survey had not been properly conducted. The persons conducting the survey would be subject to cross-examination during which their credibility, ability to recall, and general professionalism could be expected to be the subject of detailed questioning. While the person or persons who conducted the survey, assuming that a survey was conducted, may have been subject to cross-examination in the other cases that the trial judge recalled when he took notice, Bard was not extended the opportunity to cross-examine those persons.

We conclude that whether a radio frequency interference survey has been conducted with respect to a particular breath-testing machine is not within the contemplation of Evid. R. 201(B) not properly the subject of judicial notice. We realize that this holding will make it less convenient to prosecute DUI cases, since a defendant may allege that a radio frequency interference survey was not properly conducted, and thereby put the State to the trouble of offering some proof that such a survey was conducted. However, compliance with the rules of evidence are especially important with respect to blood, breath, and urine tests in DUI cases, because the test result, by itself, is sufficient for a conviction, and a DUI conviction has serious criminal consequences.

V. Bard's Third Assignment of Error is sustained insofar as it relates to his conviction for violating R.C. 4511.19(A)(3).

Bard was also convicted of violating R.C. 4511.19(A)(1), driving under the influence, to which he pled no contest. Because a chemical test is not essential to a conviction under R.C. 4511.19(A)(1), a no contest plea is not sufficient to preserve error in denying a motion to suppress a chemical test, with respect to a conviction under that subdivision of the statute. *State v. Maudlin* (August 14, 1989), Clark App. No. 2494, unreported. Accordingly, Bard's conviction under R.C. 4511.19(A)(1) must be affirmed.

The trial court did not differentiate between the two convictions in imposing sentence, but imposed a single sentence. Consequently, it is not certain how the reversal of Bard's conviction for violating 4511.19(A)(3) might affect his sentence. This cause will be remanded for resentencing.

V. Bard's Third Assignment of Error having been sustained in part, his conviction for violating R.C. 4511.19(A)(3) will be reversed, his conviction for violating R.C. 4511.19(A)(1) will be affirmed, and this cause will be remended for re-sentencing and for any other proceedings that may be consistent with this opinion.

BROGAN and GRADY, J.J., concur.